**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**ROBERT GARY,**

                              **Petitioner,**

        **- v -**                                          **9:03-CV-0480**
                                                               **(LEK)**

**JAMES CONWAY, Superintendent of Attica**
**Correctional Facility,**

                              **Respondent.**
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**              **OF COUNSEL:**


**FOR THE PETITIONER:**

**ROBERT GARY**
Petitioner, *Pro Se*
01-B-2469


**Last Known Address:**
Oneida Correctional Facility
P.O. Box 4580
Rome, New York 13442


**FOR THE RESPONDENT:**

**HON. ELIOT SPITZER**          **MARIA MORAN, Esq.**
Attorney General for the        Assistant Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455


**LAWRENCE E. KAHN**
**United States District Judge**

## MEMORANDUM-DECISION AND ORDER

I.     **BACKGROUND**

A.     **State Court Proceedings**

According to the testimony adduced at trial, at approximately 8:15 p.m. on June 6, 2001, Syracuse Police Officer David Armstrong and his partner, Officer James Renna, both members of the Syracuse Police Department Neighborhood Anti-Crime Division, were patrolling the City of Syracuse.  See Transcript of Trial of Robert Gary, Jr. (10/15/01) ("Trial Tr.") at 277-79, 306.  On that date, the officers noticed two men who appeared to be loitering outside a market on the corner of Bellevue and Midland Avenues in Syracuse.  Id. at 279, 307.  Officer Renna saw one of the men place something in his mouth when he noticed the officers' marked police car.  Id. at 308. The officers then stopped their vehicle, exited the patrol car and began talking to the two men.  Id. at 280, 309.[1]  As the officers were speaking to them, another individual who was across the street began yelling at the officers, asking them what was "going on," what they were doing, and why the officers were questioning the other men.  Id. at 281.  The individual who was shouting at the officers – who was later identified as petitioner, *pro se* Robert Gary – did not leave the area despite being directed to do so by Officer Armstrong.  Id. at 282-83. Gary then began waving his arms and cursing at the officers from the middle of the street, forcing traffic to swerve around him to avoid hitting him.  Id. at 283.  When Gary again

_____

[1]     The officers questioned the individuals and subsequently learned the names of the men to be Richard Phillips and Quinete Jackson.  Trial Tr. at 280.

refused to leave the area after being directed to do so, Officer Armstrong placed him under arrest and put him in the back seat of the police car.  Id. at 283-285.

Soon thereafter, Officer Armstrong, who was seated in the front seat of his vehicle, began asking Gary questions, however he continued screaming at the officer and attempted to bite Officer Armstrong's ear.  Id. at 285-86.[2]  Officer Armstrong then requested a more secure vehicle and attempted to remove Gary from the police car.  Id. at 285-86.  Gary refused to comply with Officer Armstrong's verbal commands to exit the vehicle, and instead locked his legs and wedged himself between the seats in an attempt to prevent Officer Armstrong from removing Gary from the car.  Id. at 287.  When Officer Armstrong wrapped his arm around Gary's head to physically remove him from the vehicle, he bit Officer Armstrong on his left arm.  Id. at 288.  Officer Armstrong advised Officer Renna of the biting, and the officers began hitting Gary in an effort to free Officer Armstrong's arm from Gary's mouth.  Id. at 288-89.  After a period of time, Officer Armstrong eventually succeeded in wresting his arm from Gary's mouth, after which he was placed on the ground.  Id. at 289-90.  Despite the fact that Officer Armstrong was kneeling on Gary's back to restrain him, Gary persisted in screaming and shouting and "acting crazy."  Id. at 290-91.  Officer Renna, in an attempt to gain control over the situation, went over to Gary and sprayed him in the face with pepper spray.  Id. at 291.  Additional officers soon thereafter arrived at the scene, and Officer Christopher

---

[2]       The police car in which Officer Armstrong placed Gary did not contain any partition between the front and back seats.  Trial Tr. at p. 285.

3

DeJoseph placed Gary in a patrol vehicle.  Id. at 291-292, 317, 333.[3]  After Gary was

secured in the police car, Officer Armstrong washed the wound caused by Gary and

proceeded to University Hospital for treatment for his injuries, which included a tetanus

shot and his agreeing to undergo a regime of HIV prophylactic drugs that consisted of

twelve pills to be taken by Officer Armstrong each day for three weeks.  Id. at 292-296.

As a result of the foregoing, Gary was charged by an Onondaga County Grand

Jury with the crimes assault in the second degree, in violation of N.Y. Penal Law §

120.05(3), resisting arrest, contrary to N.Y. Penal Law § 205.30, obstructing

governmental administration in the second degree, in violation of N.Y. Penal Law §

195.05, unlawful possession of marijuana, contrary to N.Y. Penal Law § 221.05,[4] and

three counts of disorderly conduct, in violation of N.Y. Penal Law §§ 240.20(1), (2), and

(5).  See Indictment No. 2001-0587-1 ("Indictment").

Prior to the commencement of Gary's trial, Onondaga County Court Judge

William D. Walsh presided over a pretrial hearing which addressed Gary's requests to

suppress:  i) marijuana taken from his person at the time of his arrest, on the theory that it

was obtained as a result of an unlawful search and seizure; and ii) statements made by

---

[3]      As Gary was being placed in the vehicle, he turned and spit on Officer
Renna.  Trial Tr. at 317.

[4]      During the course of arresting Gary, law enforcement agents recovered
marijuana on Gary's person.  See Transcript of Suppression Hearing (10/1/01)
("Suppression Tr.") at 11-12.

Gary to certain law enforcement agents after Gary was taken into custody.[5]  See generally Suppression Tr.  Following that hearing, in a Decision and Order filed May 21, 2001, Judge Walsh denied Gary's suppression motion in all respects.  See Appendix on Appeal ("App.") at A13-14 ("May, 2001 Suppression Order").

Gary's jury trial on the charges in the Indictment commenced on October 15, 2001.  At the conclusion of that proceeding, Gary was convicted of all charges submitted to the jury for its consideration.[6]  Trial Tr. at 563-65.  On November 7, 2001, Gary appeared before Judge Walsh for a determination on Gary's motion to set aside the jury's verdict pursuant to § 330.30(1) of New York's Criminal Procedure, as well as for a hearing concerning Gary's sentencing.  Judge Walsh denied Gary's CPL § 330.30 motion, see Transcript of Sentencing of Robert Gary Jr. (11/7/01) ("Sentencing Tr.") at 2-8, and, after determining that Gary was a predicate violent felony offender, Judge Walsh sentenced Gary to a determinate term of six years imprisonment on the second degree assault charge, with lesser, concurrent sentences on the other convictions for which he was sentenced.[7]  See id. at 12-14.

Petitioner appealed the judgment of conviction to the New York State Supreme

---

[5]     The state court record reflects that Gary made several statements to the police both before and subsequent to his arrest.  E.g., Suppression Tr. at 11, 29.

[6]     Prior to charging the jury, the County Court dismissed the resisting arrest charge that had been returned against Gary.  Trial Tr. at  442-43.

[7]     In addition to dismissing the resisting arrest charge, Judge Walsh noted at sentencing that a jail term was neither appropriate nor legally permissible for Gary's conviction on the charge of unlawful possession of marijuana, a violation.  See Sentencing Tr. at pp. 13-14; see also N.Y. Penal L. § 221.05.

5

Court, Appellate Division, Fourth Department.  On appeal, appellate counsel argued that Gary was denied his right to a fair trial due to the cumulative errors committed at his criminal trial, including:  i) the lack of evidence presented at trial to support the charges against Gary; ii) the County Court's error in responding to the jury's request for a read back of trial testimony; iii) ineffective assistance of trial counsel and iv) prosecutorial misconduct during the course of its summation.  See Appellant's Brief on Appeal (5/21/02) ("App. Br.") at 15-23.

By Memorandum and Order dated November 15, 2002, the Appellate Division affirmed Gary's conviction and sentences in all respects.  People v. Gary, 299 A.D.2d 960 (N.Y. App. Div. 2002).  Gary's application for leave to appeal to the New York Court of Appeals was denied by that Court on January 31, 2003. People v. Gary, 99 N.Y.2d 582 (2003).

**B.    This Action**

Petitioner commenced the present action in the Western District of New York on April 2, 2003.  Petition (Dkt. No. 1) at 1.  By order of United States District Judge David G. Larimer issued on April 11, 2003, the proceeding was transferred to this District in light of the fact that petitioner's trial and conviction occurred within the geographical boundaries of the Northern District of New York.  See Dkt. No. 3.

In his petition, Gary alleges that:  i) his conviction was obtained by the use of evidence obtained pursuant to an unlawful arrest; ii) the County Court's failure to properly read back all trial testimony requested by the jury during its deliberations

violated petitioner's due process rights; and iii) misconduct during the course of the prosecution's summation deprived Gary of his right to a fair trial.  See Petition at 5-6.

On September 18, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer and memorandum of law in opposition to Gary's pleading.  Dkt. Nos. 10-11.  In opposing his petition, respondent argues that Gary is procedurally barred from asserting some of the grounds he raises in his petition, and that all of petitioner's habeas claims are without merit.  See  Response Memorandum ("Resp. Mem") (Dkt. No. 11).

On October 1, 2003, Gary filed a reply memorandum of law in further support of his petition.  Reply (Dkt. No. 13).

Finally, a staff attorney for this Court ascertained that on July 20, 2006, Gary was released to parole supervision by the Department of Correctional Services ("DOCS").  See http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130 (inmate name: Gary, Robert) (last viewed 11/7/06) ("DOCS Summary").

## II.   **DISCUSSION**

### A.   **Mootness**

This Court initially considers whether Gary's release from prison has rendered this action moot.[8]

---

[8]      When a case becomes moot, the federal court is deprived of subject matter jurisdiction over the action.  See Fox v. Board of Trustees of the State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation and citation omitted).  Although respondent has not argued that Gary's release may have rendered the present action moot, the Court notes that federal courts may consider *sua sponte* matters that might impact the court's

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy." Spencer v. Kemna, 523 U.S. 1, 7 (1998); Baur v. Veneman, 352 F.3d 625, 631-32 (2d Cir. 2003); Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 258 F.Supp.2d 157, 160 (E.D.N.Y. 2003). Thus, where the issues presented by the party in an action are no longer "live," or the party lacks a legally cognizable interest in the outcome, the federal action is properly considered moot. City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (citations omitted)

The "case-or-controversy" requirement of Article III is typically satisfied in the context of federal habeas petitions challenging the validity of a state court conviction because the incarceration "constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." Spencer, 523 U.S. at 7; see also Geraci v. Sheriff, Schoharie County Jail, No. 9:99-CV-0405, 2004 WL 437466, at *1-2 (N.D.N.Y. Feb. 20, 2004) (Sharpe, D.J.). A habeas petition challenging a criminal conviction is not necessarily moot when the petitioner is released from prison because collateral consequences of that conviction may still exist after an inmate's release. See, e.g., Spencer, 523 U.S. at 12 ("it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences'") (quoting Sibron v. New York, 392 U.S. 40, 55 (1968).

Turning to the facts of the case *sub judice*, as noted above, the longest sentence

---

subject matter jurisdiction. McGinty v. New York, 251 F.3d 84, 90 (2d Cir. 2001) (citing Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000)).

8

received by Gary following his conviction was a determinate term of six years

imprisonment.  <u>See</u> Sentencing Tr. at 12.  According to the DOCS website, the maximum

expiration date relating to that sentence will not expire until June 2, 2007.  <u>See</u> DOCS

Summary.  Since Gary is still on parole for the assault conviction challenged herein, and

his continued freedom is necessarily conditioned upon various factors imposed on him in

conjunction with his parole, this Court finds that his change in status from that of inmate

to that of parolee does not render this action moot.  <u>See</u> <u>Jones v. Cunningham</u>, 371 U.S.

236, 243 (1963) ("[w]hile petitioner's parole releases him from immediate physical

imprisonment, it imposes conditions which significantly confine and restrain his freedom;

this is enough to keep him in the 'custody' of the members of the [state] Parole Board

within the meaning of the habeas corpus statute...."); <u>see also</u> <u>Earley v. Murray</u>, 451 F.3d

71, 75 (2d Cir. 2006)  (citing <u>Cunningham</u>) ("parole satisfies the 'in custody' requirement

of habeas petitions"); <u>Dixon v. Miller</u>, 293 F.3d 74, 78 (2d Cir. 2002) ("[e]ven though

[petitioner] has been released on parole, he remains 'in custody' for habeas proceedings")

(citing <u>Cunningham</u> and <u>Maleng v. Cook</u>, 490 U.S. 488, 491 (1989)).

 Based upon the foregoing, this Court concludes that this Court has retained subject

matter jurisdiction over the petition notwithstanding Gary's release to parole.

   **B.   <u>Failure to Notify Court of Current Address</u>**

 In this Court's May 8, 2003 order that directed the respondent to file a response to

Gary's petition, Gary was specifically advised that he was required to keep both the

Clerk's Office for the Northern District of New York and the respondent apprised of his

current address, and that his failure to do so would result in the dismissal of his action.[9]
See Dkt. No. 5 at 4.  Despite that clear and unambiguous notice to Gary, he has not
informed this Court of his current address since his release from the custody of the DOCS
in July, 2006.

In discussing the requirement that parties in the Northern District keep the Clerk
apprised of their current address, then-Magistrate Judge Gary L. Sharpe observed:

> Litigants have a continuing obligation to keep the court
> informed of any change of address that may occur during the
> pendency of an action.  See N.D.N.Y.L.R. 10(b); Fenza v.
> Conklin, 177 F.R.D. 126 (N.D.N.Y. 1998) (Pooler, D.J.).
> Notification of a new address is essential for the orderly
> disposition of cases as it is not feasible for the court to
> independently maintain the current addresses of all parties to
> pending actions.  Id. at 127 (citations omitted).  Furthermore,
> Rule 41(b) of the Federal Rules of Civil Procedure allows a
> court to dismiss an action for the failure to prosecute or
> comply with an order of the court.  See Williams v. Faulkner,
> [No. 95-CV-741,] 1998 WL 278288 (N.D.N.Y. May 20,
> 1998) (Pooler, D.J.).  Consequently, the petitioner's failure to
> notify the court of an address change is grounds for dismissal.
> [Fenza,] 177 F.R.D. at 127.

Michaud v. Williams, No. 98CV1141, 1999 WL 33504430, at *1 (N.D.N.Y. Nov. 5,
1999).

For nearly four months, Gary has failed to comply with the directive of this Court
– as well as the requirements of this District's Local Rules – concerning his obligation to
keep the Clerk of the Court apprised of petitioner's current address.  Therefore, this Court

---

[9]        That directive was issued in recognition of Rules 10.1(b) and 41.2(b) of the
*Local Rules of Practice for the Northern District of New York* ("Local Rules").

could dismiss the present action based solely upon petitioner's failure to comply with the terms of this Court's May, 2003 Order and Local Rules 10.1(b) and 41.2(b).  See Michaud, 1999 WL 33504430, at *1; see also Faulkner, 1998 WL 278288, at *1 (citing N.D.N.Y.L.R. 41.2(b)).  However, even considering the claims raised by Gary in his petition, the Court finds that he is not entitled to the relief he seeks.

### C.     Substance of Petition

#### 1.     Procedurally Defaulted Claims

The Court initially considers respondent's argument that Gary has procedurally defaulted on two of the claims he asserts in this action.  See Resp. Mem. at 8-12.

In his first ground, Gary argues, *inter alia*, that his conviction was obtained by the use of evidence that was obtained pursuant to an unlawful arrest.  See Petition, Ground One.[10]  In his second claim, Gary argues that Judge Walsh improperly failed to comply with the jury's request for a reading back of the testimony of one of the witnesses who testified on behalf of the defense at Gary's trial.  See Petition, Ground Two.  Gary raised that same claim in his direct appeal of his conviction.  See App. Br. at 18-19.

#### i.     Failure to Exhaust Claim Raised in Ground One

Gary never asserted any appellate claim challenging Judge Walsh's May, 2001 Suppression Order.  See App. Br.

It is well settled that a federal district court "may not grant the habeas petition of a

---

[10]     Gary's first ground also argues that the evidence adduced at trial was insufficient to support the convictions.  *See* Petition, Ground One.

11

state prisoner unless it appears that the applicant has 'exhausted the remedies available in the courts of the State . . . '" Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir. 2003) (quoting Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001) (other citation omitted)); see also Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999)).  As the Supreme Court noted in O'Sullivan, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." O'Sullivan, 526 U.S. at 844; see also Galdamez, 394 F.3d at 72 (quoting O'Sullivan).[11]

This exhaustion doctrine is satisfied if the claim has been "fairly presented" to the state courts. See Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state courts have been apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." Daye v. Attorney General of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982); Morales v. Miller, 41 F.Supp.2d 364, 374 (E.D.N.Y. 1999).  Thus, "the nature or presentation of the claim must have been likely to alert the court to

_____

[11]     This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan 526 U.S. at 845; see also Galdamez, 394 F.3d at 72 (citing O'Sullivan).

12

the claim's federal nature." Daye, 696 F.2d at 192; Morales, 41 F.Supp.2d at 374.

Gary has plainly failed to exhaust his claim which alleges that he was convicted through the use of evidence obtained in violation of his constitutional rights because he did not raise such claim in his direct appeal and he has never pursued any collateral attacks relating to his conviction in the state courts. See App. Br.; Petition at ¶ 10.

When a claim asserted in a federal habeas petition was never presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) when "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio, 269 F.3d at 90 (citing Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997)); see also Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile). This Court must therefore determine whether it would be futile for Gary to now present to the state courts his claim challenging Judge Walsh's order denying Gary's suppression motion.

Gary is plainly foreclosed from filing another appeal with the Fourth Department in order to raise this claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division." See Aparicio, 269 F.3d at 91. Moreover, petitioner could not now properly raise this claim, which is necessarily based upon matters contained in the state court record, through a motion to vacate his judgment of conviction pursuant to CPL § 440.10 because CPL § 440.10(2)(c) prohibits county courts from reviewing a claim on

13

collateral review when the defendant unjustifiably failed to raise a record-based claim on

direct appeal.  See Aparicio, 269 F.3d at 93.

Accordingly, this aspect of Gary's first ground for relief must be "deemed

exhausted" for purposes of his habeas application. See  St. Helen v. Senkowski, 374 F.3d

181,183-84 (2d Cir. 2004); Spence v. Superintendent Great Meadow Correctional

Facility, 219 F.3d 162, 170 (2d Cir. 2000).  Although the claim is "deemed exhausted," it

is also procedurally defaulted.  See Aparicio, 269 F.3d at 90 (citing Coleman v.

Thompson, 501 U.S. 722, 735 n.1 (1991)); see also Spence, 219 F.3d at 170; Murray v.

Schultz, No. 05CIV.0472, 2005 WL 1523504, at *14 & n.32 (S.D.N.Y. June 29, 2005)

(Peck, M.J.) (federal claims that could have been raised on direct appeal but were not

must be deemed exhausted and procedurally barred from federal habeas review); Haymon

v. New York, 332 F.Supp.2d 550, 555 (W.D.N.Y. 2004)(citing Grey v. Hoke, 933 F.2d

117, 120-21 (2d Cir. 1991)).

### ii.   Appellate Division's Denial of Claim Raised in Second Ground

In considering Gary's appellate claim that the trial court committed error when it

did not read back to the jury all of the testimony which the jury had requested in its note

to Judge Walsh, the Appellate Division found that Gary:

> failed to preserve for our review his contention that County
> Court failed to respond meaningfully to the jury's request for
> the reading of certain testimony and in any event the record is
> insufficient to enable us to review that contention.

Gary, 299 A.D.2d at 961 (citations omitted).

The Appellate Division's finding that an appellant failed to preserve a claim for appellate review constitutes a procedural denial of such a claim.  Manzella v. Senkowski, No. 97-CV-921, 2004 WL 1498195, at *28 (W.D.N.Y. July 2, 2004); Cabassa v. Filion, No. 03 CIV. 2920, 2004 WL 1367503, at *5 (S.D.N.Y. June 16, 2004) ("the Appellate Division clearly rejected petitioner's claim ... based on a state-based procedural bar, finding that petitioner had failed to preserve th[e] issue for appellate review") (citation omitted).  Therefore, Gary has procedurally defaulted on the claim he raises in his second ground for relief.

### iii.    Federal Review of Procedurally Barred Claims

Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for his procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[12]  Dixon, 293 F.3d at 80-81 (citing Coleman); St. Helen 374 F.3d at 184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)) (other citations omitted); see generally Murray v. Carrier, 477 U.S. 478, 495-96 (1986); King v. Greiner, 210 F.Supp.2d 177, 182 (E.D.N.Y. 2002) (court is precluded

---

[12]     A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Dixon, 293 F.3d at 81.

from considering procedurally defaulted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence"); Lora v. West, No. 04Civ.1902, 2005 WL 372295, at *9 (S.D.N.Y. Feb. 17, 2005); Morales v. Sabourin, No. 00 Civ. 8773, 2002 WL 32375006, at *11 (S.D.N.Y. Apr. 30, 2002).

To establish "cause" sufficient to permit federal review of procedurally barred claims, a petitioner must show that some "objective external factor" impeded his ability to either preserve the claim for appellate review or fully exhaust his claim.  Coleman, 501 U.S. at 753; Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999); Lutes v. Ricks, No. 02-CV-1043, 2005 WL 2180467, at *8 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citations omitted).  Examples of such objective, external factors include "interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.  Murray, 477 U.S. at 488; United States v. Helmsley, 985 F.2d 1202, 1206 (2d Cir. 1993); Key v. Artuz, No. 99-CV-161, 2002 WL 31102627, at *9 (E.D.N.Y. Sept. 16, 2002).

In the present case, Gary has not argued – much less established – that he has demonstrated cause for his procedural default as to either of the above-referenced claims. Specifically, Gary does not claim in his petition or reply memorandum of law that he ever sought review of Judge Walsh's decision denying the suppression motion from the Appellate Division, or that he was prevented from challenging that ruling due to any objective, external factors.

As to Gary's claim that the County Court improperly responded to the jury's

request for a read-back of trial testimony, Gary has not alleged any cause for his failure to preserve this issue for appellate review in any of the submissions he has filed with the Court. Significantly, although Gary argued on appeal that his trial counsel rendered ineffective assistance, conspicuous by its absence in his appellate brief is any claim that Gary's trial counsel was ineffective because he failed to preserve for appellate review the manner in which the County Court responded to the jury's request for the reading back of testimony. <u>See</u> App. Br. at 14-15.

Since Gary has not demonstrated any cause for his procedural default concerning these claims, this Court need not decide whether he has established the requisite prejudice because federal habeas relief is unavailable under this limited exception that permits federal habeas review of procedurally forfeited claims unless both cause **_and_** prejudice is demonstrated. <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir. 1985); <u>Long v. Lord</u>, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.) (citations omitted).

Moreover, as is discussed more fully below, the Court finds that petitioner's claim challenging the sufficiency of the evidence presented against him at trial is without merit. Since that determination precludes a finding that Gary is "actually innocent" of the crimes of which he was convicted, this final exception that would have permitted this Court to consider Gary's procedurally forfeited claims is unavailable to him.

Based upon the foregoing, this Court denies, as procedurally barred:  i) the aspect of Gary's first ground for relief which argues that unlawfully obtained evidence was used

at trial to secure his conviction; and ii) Gary's second ground for relief, which alleges trial court error concerning the manner in which the County Court responded to the jury's request for a reading back of testimony.

### 2.   **Remaining Claims**

The Court now addresses the remaining claims asserted by Gary in his petition.

### i.   **Standard of Review**

In <u>Rodriguez v. Miller</u>, 439 F.3d 68 (2d Cir. 2006), the Second Circuit observed that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

<u>Rodriguez</u>, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); <u>see also</u> <u>DeBerry v. Portuondo</u>, 403 F.3d 57, 66 (2d Cir. 2005); <u>Miranda v. Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>DeBerry</u>, 403 F.3d at 66; <u>Boyette v. LeFevre</u>, 246 F.3d 76, 88 (2d Cir. 2001).

"A state court adjudication is 'contrary to' clearly established federal law only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on

18

a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" <u>Rodriguez</u>, 439 F.3d at 73 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)).  Under the "unreasonable application" clause of the AEDPA, a federal habeas court may only grant the writ where the state court's decision "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Rodriguez</u>, 439 F.3d at 73 (quoting <u>Williams</u>, 529 U.S. at 413).  A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." <u>Williams</u>, 529 U.S. at 409; <u>see also</u> <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).  The <u>Rodriguez </u>court noted that although "'some increment of incorrectness beyond error is required'" to properly grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Rodriguez</u>, 439 F.3d at 73 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)).

<blockquote>

ii.    **Substance of Gary's Claims**

a.    **Sufficiency of Evidence**
</blockquote>

In addition to the procedurally forfeited claim in Gary's first ground for relief, he also argues in that ground that there was insufficient evidence adduced at trial to support the jury's guilty verdict.  Petition, Ground One (Dkt. No. 1).

In rejecting this claim in the context of Gary's direct appeal, the Appellate

Division held:

> Contrary to defendant's contentions, the evidence is legally
> sufficient to support the conviction of assault in the second
> degree, obstructing governmental administration in the second
> degree, and disorderly conduct.

Gary 299 A.D.2d at 961.  This Court is therefore charged with determining whether that

finding is either contrary to, or represents an unreasonable application of, relevant, clearly

established, Supreme Court precedent.

### 1)      Clearly Established Supreme Court Precedent

The Due Process Clause of the Fourteenth Amendment protects a defendant in a

criminal case against conviction except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime(s) with which he is charged.  See Fiore v. White,

531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); In re

Winship, 397 U.S. 358, 364 (1970).  This inquiry "does not focus on whether the trier of

fact made the correct guilt or innocence determination, but rather whether it made a

rational decision to convict or acquit."  Herrera v. Collins, 506 U.S. 390, 402 (1993).  A

habeas petitioner claiming that there was insufficient evidence supporting the conviction

is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record

evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a

reasonable doubt."  Jackson, 443 U.S. at 324; Schlup v. Delo, 513 U.S. 298, 323 n.38

(1995).  The reviewing court is required to consider the evidence in the light most

favorable to the prosecution, and draw all inferences in its favor.  Jackson, 443 U.S. at

319.  The relevant inquiry is "whether the evidence adduced at trial could support any

rational determination of guilty beyond a reasonable doubt." United States v. Powell, 469

U.S. 57, 67 (1984) (citing Jackson) (other citations omitted).

> **2)   Contrary To, or Unreasonable Application Of, Relevant Supreme Court Precedent**

"When considering the sufficiency of the evidence of a state conviction, '[a]

federal court must look to state law to determine the elements of the crime.'" Ponnapula

v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quartararo v. Hanslmaier, 186 F.3d

91, 97 (2d Cir. 1999)); see also Fama v. Comm'r of Correctional Services, 235 F.3d 804,

811 (2d Cir. 2000) (citing Quartararo); Flowers v. Fisher, No. 03 CV 5405, 2006 WL

3050876, at *8 (E.D.N.Y. Oct. 23, 2006) (citations omitted); Hill v. Miller, No.

03-CV-1738, 2005 WL 807044, at *2 (E.D.N.Y. Apr. 8, 2005) (quoting Ponnapula).  This

Court will therefore consider the elements of each of the crimes of which Gary was

convicted in conjunction with the testimony offered at trial in considering the substance

of this aspect of Gary's first ground for relief.

> **i)   Disorderly Conduct**

Considering first Gary's convictions on three separate counts of disorderly

conduct, the Court notes that to convict a defendant of the crime of disorderly conduct in

New York, the prosecution must establish the following three elements: i) the defendant's

conduct was "public" in nature; ii) the individual engaged in such conduct with the "intent

to cause public inconvenience, annoyance or alarm" or recklessly created a risk thereof;

and iii) the conduct must satisfy one of the specific descriptions set forth in subsections

one through seven of New York's disorderly conduct statute.  See Provost v. City of

Newburgh, 262 F.3d 146, 157 (2d Cir. 2001) (citation omitted).  Therefore, to properly

address this aspect of Gary's petition, this Court must look to the elements of the

disorderly conduct statute in New York.  That statute provides that a person is guilty of

disorderly conduct when:

> with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
>
> 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
>
> 2. He makes unreasonable noise; or
>
> 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
>
> 4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
>
> 5. He obstructs vehicular or pedestrian traffic; or
>
> 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
>
> 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.

N.Y. Penal L. § 240.20.[13]

---

[13]      Gary was both accused and found guilty of violating subdivisions (1), (2) and (5) of the foregoing statute.  See Indictment, Grounds Five through Seven; Trial Tr. at 563-64.

In testifying for the prosecution, Officer Armstrong provided detailed testimony regarding Gary's actions on June 6, 2001.  In support of the disorderly conduct charges, Officer Armstrong testified that as he was questioning an individual whom the officer suspected of possessing narcotics, Gary:

> [Began] shouting at [Officer Armstrong], wanted to know what was going on.... He was yelling at me.... I told him, you know, "Move along.  It doesn't concern you."  He then told me that the person was his cousin.  I asked him what was his cousin's name was and he couldn't answer that question.  So I did not believe it was his cousin and asked him to leave.  I again was back with [the individual whom Officer Armstrong was initially questioning] when Robert Gary was yelling again.  "I want to know what's going on.  That's my cousin.  Why are you fucking with my cousin?"  Now he is out in the street yelling at me.  He is getting closer to me.  He is behind me.  I am trying to deal with the person that I am dealing with ... and Mr. Gary is behind me screaming wanting to know what's going on.  He is in the street.  I addressed him three separate times telling him to leave.  Each time he became more angry, loud, animated, you know, he is waving his arms.  And he starts yelling after the third time I am telling him to leave.  He is right in the street.  He is yelling, "Fuck this. Fuck the police," and he is swinging his arms.  And now there is a crowd of people gathering, you know, there is people scattered – Bellevue and Midland Ave. come together like this and there [are] people in the area, a lot of people in the area loitering around, not necessarily concentrated right in the corner....  So now we have got a crowd gathering.... [H]e was right in the street.  So vehicles that approached the intersection of Bellevue and Midland Ave. from either direction had to stop or swerve around him to avoid him because he was in the street.  I was telling him to get out of the street to move on.  And he's, you know, continues to yell, "Fuck the police."  And, you know, like I said, he is drawing a crowd.  At that time, I, had to leave my subject Mr. Phillips that I was speaking with, go to Mr. Gary.  And I grabbed him by his arms, told him he was under arrest and took him back to my car.

Trial Tr. at 282-84.

Officer Armstrong's testimony regarding Gary's conduct, which was substantially

similar to Officer Renna's testimony regarding Gary's actions on June 6, 2001, see id. at

310-13, established that at that time, Gary: i) engaged in violent, tumultuous or

threatening behavior; ii) generated unreasonable noise;[14] and iii) obstructed vehicular or

pedestrian traffic.

**ii)** **Obstructing Governmental
Administration in the Second Degree**

The third count in the Indictment charged Gary with second degree obstructing

governmental administration.  See Indictment, Ground Three.  That accusatory instrument

specifically alleged that Gary obstructed governmental administration when he "bit police

officer Dave Armstrong as this Officer was attempting to transport the defendant from

one place to another."  Id.

Under Penal Law § 195.05, an individual obstructs governmental administration

when he:

> [I]ntentionally obstructs, impairs or perverts the
> administration of law or other governmental function or
> prevents or attempts to prevent a public servant from
> performing an official function, by means of intimidation,
> physical force or interference, or by means of any
> independently unlawful act.

Id.; see also Matter of Davan L., 91 N.Y.2d 88, 90-91 (1997).

---

[14]     The term "unreasonable noise" in this context means "'a noise of a type or
volume that a reasonable person, under the circumstances, would not tolerate.'"  Provost,
262 F.3d at 159 (quoting People v. Bakolas, 59 N.Y.2d 51, 53 (1983)).

Officer Armstrong testified that as he attempted to remove Gary from the patrol car, he bit the officer's arm "with his upper and lower teeth," so that Gary had a "mouth full of [Officer Armstrong's] flesh and muscle."  Trial Tr. at 288.  Despite Officer Armstrong's repeated shouts to Gary directing him to let go of the arm, Gary continued biting Officer Armstrong's arm to the point where it began bleeding.  Id. at 288-89.  After several minutes, Officer Armstrong succeeding in pulling his arm from Gary's teeth.  Id. at 289.[15]

The foregoing testimony demonstrated that Gary attempted to prevent Officer Armstrong from performing an official function – placing Gary in a secure police vehicle – by means of intimidation, physical force and/or interference.

### iii)    Second Degree Assault

Turning to the final conviction for which Gary was sentenced,[16] the Court notes that in New York, a conviction for assault in the second degree requires proof beyond a reasonable doubt that the defendant "with intent to prevent a peace officer, police officer, [or] a fireman ... from performing a lawful duty ... causes physical injury to such peace officer, police officer, [or] fireman...."  See CPL § 120.05(3); see, e.g., Hill, 2005 WL 807044, at *2.

---

[15]    Officer Armstrong's testimony regarding Gary's actions were mirrored by Officer Renna, who also observed Gary biting Officer Armstrong's arm after he attempted to remove Gary from the patrol car.  Trial Tr. at 314-15.

[16]    As noted above, Gary was not convicted of the resisting arrest charge and he was not sentenced on his unlawful possession of marijuana conviction, a violation.  See Sentencing Tr. at 13-14; see also N.Y. Penal L. § 221.05.

25

The testimony of Officers Armstrong and Renna regarding Gary's conduct on June 6, 2001 established that Gary intended to prevent Officer Armstrong from performing a lawful duty.  See, e.g., Trial Tr. at 282-84, 313-17.  Moreover, defense counsel stipulated to the fact that Officer Armstrong received the physical injury required under CPL § 120.05(3).  See Trial Tr. at 296.

A petitioner bears a "very heavy burden" when seeking to invalidate a conviction based upon a claim of insufficient evidence.  Ponnapula, 297 F.3d at 179 (citing Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)); see also, Clark v. Irvin, 844 F.Supp. 899, 904 (N.D.N.Y. 1994) (Hurd, M.J.).  Specifically, the habeas court is to determine whether:

> the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt.  In making this determination, [the court] must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

Ferguson v. Walker, No. 00CIV1356, 2001 WL 869615, at *4 & n.4 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.) (quoting United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983)) (citations omitted), adopted, Ferguson v. Walker, No. 00CIV1356, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002).

Based upon its review of the state court record and the documents filed herein, this Court concludes that the evidence presented at trial established Gary's guilt of all of the charges of which he was convicted and for which he was sentenced.  Since that evidence was more than sufficient to surpass the relatively modest hurdle posed by Jackson, this Court denies this remaining aspect of Gary's first ground for relief.

26

### b.  Prosecutorial Misconduct

In his third and final claim, Gary argues that his conviction must be set aside because the prosecutor engaged in misconduct during the course of delivering her summation.  Petition, Ground Three.

### 1)  Clearly Established Supreme Court Precedent

A criminal defendant's right to a fair trial is mandated by the due process clause of the United States Constitution.  Albright v. Oliver, 510 U.S. 266, 273 n.6 (1994) (citing United States  v. Agurs, 427 U.S. 97, 107 (1976).[17]  For habeas relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).

### 2)  Contrary To, or Unreasonable Application Of, Relevant Supreme Court Precedent

Gary argues in the present action, as he did on appeal, that the prosecutor engaged in misconduct when she delivered her summation to the jury.  Specifically, Gary argues that during her closing argument, the prosecutor improperly: 1) denigrated Gary; 2)

---

[17]      "A right to a fair trial is a right ... protected by the due process clause of the Fourteenth Amendment."  Adamson v. People of State of California, 332 U.S. 46, 53 (1947) (footnote omitted).

became an unsworn witness; 3) vouched for the credibility of prosecution witnesses; and 4) shifted the burden of proof to Gary.  See Petition, Ground Three; see also App. Br. at 19-22.[18]

To warrant habeas intervention based upon a claim that the prosecutor engaged in misconduct during the course of delivering a closing argument, a petitioner must show "'that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (quoting Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994)); see also Copeland v. Walker, 258 F.Supp.2d 105, 131-32 (E.D.N.Y. 2003) (citing Tankleff).  Relevant factors to be considered in arriving at this determination include the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of defendant's conviction absent the prosecutor's objectionable remarks.  Bentley, 41 F.3d at 824; Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990); Brown v. Phillips, No. CV-03-0361, 2006 WL 656973, at *7 (E.D.N.Y. Mar. 13, 2006) (citing Tankleff); see also Darden, 477 U.S. at 181-83;  Donnelly, 416 U.S. at 644-47.

Addressing first Gary's claim that the prosecutor denigrated Gary during her closing argument, the Court notes that in her summation, the prosecutor rhetorically asked the jury to consider whether Gary drank alcohol for a living because on the day he was

---

[18]     The Fourth Department denied this aspect of Gary's appeal on the merits. Gary, 299 A.D.2d at 961-62.

28

arrested, Gary informed a police officer that he had just finished consuming a forty ounce beer and also claimed that he was returning home from work when he came upon the scene at which Officers Armstrong and Renna were present.  Trial Tr. at 479-80.  The prosecutor argued that Gary's statements that day suggested that his first comment to law enforcement agents was a lie.  Trial Tr. at 480.  Gary argues that such statement disparaged him and entitles him to habeas relief.  Petition, Ground Three; Reply at 12.

Defense counsel did not object to this aspect of the prosecutor's comment, therefore the County Court did not take any corrective action at the time of the prosecutor's statement.[19]  Nevertheless, Judge Walsh specifically instructed the members of the jury that they were the sole judges of both the facts in the case and the credibility of the trial witnesses.  Trial Tr. at 510–14.  Regardless, the alleged misconduct of the prosecutor in this regard was both brief and isolated, and, in light of the substantial evidence of Gary's guilt offered at trial discussed more fully above, it appears to this Court as though Gary's conviction on the charges in the Indictment was certain even absent these remarks of the prosecutor.  Thus, this aspect of Gary's third ground for relief is without merit.

Next, in arguing that the prosecutor became an unsworn witness in her summation, Gary argues that during her closing argument, the prosecutor improperly:  1) testified about how much alcohol Gary drank the day he was arrested, despite the lack of evidence

---

[19]        Defense counsel's failure to object to the allegedly improper remark of the prosecutor "undermines the seriousness of petitioner's claim of error."  Rojas v. Senkowski, No. CV-95-1866, 1996 WL 449321, at *4 (E.D.N.Y. July 29, 1996) (citation omitted).

regarding this issue; 2) claimed that Gary did not sustain any injuries on the day he was arrested; and 3) stated that the redness that appeared in Gary's eyes on the day of his arrest was attributable to the alcohol he had consumed earlier that day, rather than the pepper spray law enforcement agents used to subdue him.  See Petition, Ground Three; Reply at 12.

Sergeant David Proud of the Syracuse Police Department prepared a report in conjunction with the underlying criminal investigation in which he noted that subsequent to Gary's arrest, he informed Sergeant Proud that petitioner had consumed a forty ounce beer on the day he was arrested.  App. at A38.  That report was received into evidence at Gary's trial.  See Trial Tr. at 370-71.  Therefore, the prosecutor could properly refer to petitioner's consumption of alcohol in her summation.  Next, the Court notes that a fair reading of the prosecution's statement regarding the injuries sustained by Gary on the day he was arrested establish that the prosecutor was merely arguing to the jury that the prosecution witnesses' testimony was credible when they testified about their actions with respect to Gary; the prosecutor was not claiming that he was not injured during the course of his arrest.  See Trial Tr. at 489.[20]  Finally, in describing Gary's eyes as "bloodshot"

---

[20]     The transcript reflects the following regarding the prosecution's comments about Gary's injuries:

> So you heard complaints that there was pain by the defendant.  Of course there was.  [Law enforcement agents] testified, quite candidly I might add, that they had to bang on him and he still wasn't letting go.  How do you know that this was candid and they didn't just hit him ahead of time?  Well, he didn't have any reports of any injuries to the defendant.
> And if you look at the photographs, you don't see any

around the time of his arrest, the prosecutor stated that such appearance could have been "caused by the forty ouncer" Gary had imbibed prior to his arrest.  Trial Tr. at 491.  Since the fact that Gary had consumed that quantity of alcohol that day was in evidence, the prosecutor's comments regarding the condition of Gary's eyes can be viewed as fair comment on the evidence adduced at trial.

Turning next to Gary's claim that the prosecutor improperly vouched for the credibility of the prosecution witnesses, see Petition, Ground Three, the Court notes that this claim appears to be rooted in the prosecutor's comments during summation that the police officers who testified about the incident on  June 6, 2001 "t[old] the truth."  Trial Tr. at 490.  Although it is generally improper for the prosecution to vouch for the honesty of a witness, United States v. Parker, 903 F.2d 91, 100 (2d Cir. 1990) (citation omitted), when defense counsel comments on the credibility of witnesses in his summation, the

_____

> injuries to the defendant either, so there were no injuries to this defendant.  They did not have to testify at all they did anything about hitting this guy because there was nothing, nothing that the defense did that corroborated that.  But that's how you know that their testimony is candid because they didn't even have to tell you how much they were pummeling him when they were trying to get his teeth off of Armstrong's arm because he has got no injuries. But they did tell the truth.
> They told you that and they told you why they did it and how hard they did it and, my God, the guy still wouldn't let go. They didn't even have to tell you that. So if they were going to lie, they would have lied by not even saying that they touched him at all because he had no injuries.  I would like you to take that into account because it shows how credible the testimony of these officers really are.

Trial Tr. at 489-90.

prosecution is entitled to respond to that issue in its closing argument.  Salahuddin v. Strack, No. 97-CV-5789, 1998 WL 812648, at *9 (E.D.N.Y. Aug. 12, 1998) (citing United States v. Rivera, 22 F.3d 430, 438 (2d Cir. 1994)).

In his summation, defense counsel referred to the testimony of one of the prosecution witnesses as "incredible," Trial Tr. at 465, and argued that defense witness Richard Phillips was "the most credible witness that [the jury] heard in this trial."  Trial Tr. at 472.  Thus, the prosecutor's comment concerning the credibility of prosecution witnesses appears to this Court to have been a measured response to defense counsel's closing argument.  E.g., Walker v. Bennett, 262 F.Supp.2d 25, 40 (W.D.N.Y. 2003); Grace v. Artuz, 258 F.Supp.2d 162, 176 (E.D.N.Y. 2003); King, 210 F.Supp.2d at 180.

As to Gary's claim that the prosecution shifted the burden of proof to Gary during the course of its summation, Petition, Ground Three, the Court notes that Gary has not cited any portion of the prosecution's summation upon which this aspect of his habeas claim is based.  See Petition; see also Reply.  Petitioner's failure to cite any portion of the closing argument that supports this claim represents a failure on his part to shoulder his burden of proof.  E.g., Gillis v. Edwards, 445 F.Supp.2d 221, 233-34 (N.D.N.Y. 2006) (McCurn, S.J.) (citations omitted).  Additionally, the Court's independent review of the prosecutor's summation failed to reveal any instance where the prosecutor attempted to argue that Gary was required to prove anything at his criminal trial.  Finally, even had the prosecution has improperly suggested that Gary had an obligation to present evidence in his favor at his trial, the Court notes that such an error will typically be rendered harmless

32

where the trial court's subsequent instructions to the jury make clear to the jury that the

prosecution – and only the prosecution – has the burden of proof in a criminal case.

United States v. Walker, 835 F.2d 983, 989 (2d Cir. 1987); see Crawford v. Keane, No.

00 CIV. 6672, 2001 WL 913947, at *6 (S.D.N.Y. Aug. 14, 2001) (jury charge cured any

effect inappropriate comments concerning burden of proof may have had on jury); Lugo

v. Kuhlmann, 68 F.Supp.2d 347, 369 (S.D.N.Y. 1999).

In the underlying criminal trial, the County Court instructed the jury as follows

concerning the burden of proof:

> The accused is not required to prove that he is not guilty.  In
> fact, the accused is not required to prove or disprove anything.
> To the contrary, the People have the burden of proving the
> accused guilty beyond a reasonable doubt.  That means before
> you can find the accused guilty of a crime, the People must
> prove beyond a reasonable doubt every element of the crime,
> including that the accused is the person who committed that
> crime.  The burden of proof never shifts from the People to
> the accused.  If the People fail to satisfy their burden of proof,
> you must find the accused not guilty.

Trial Tr. at 508.  The above-described charge to the jury rendered harmless any improper

argument of the prosecution that petitioner was required to prove anything at his criminal

trial.

Since Gary has not demonstrated that the prosecutor engaged in misconduct with

respect to any of the instances cited in his petition, he has a fortiori failed to demonstrate

that the Appellate Division's decision denying this aspect of his appeal, see Gary, 299

A.D.2d at 961-62, is either contrary to, or represents an unreasonable application of, the

Supreme Court precedent referenced above.  Thus, this final claim in Gary's petition must

be denied.

WHEREFORE, based upon the above, it is hereby

ORDERED, that the petition filed by Gary in this matter is DENIED and

DISMISSED, and it is further

ORDERED, that the state court records be returned directly to the Attorney

General at the conclusion of these proceedings (including any appeal of this

Memorandum-Decision and Order filed by any party), and it is further

ORDERED, that the Clerk of the Court serve a copy of this Decision and Order

upon the parties by regular or electronic mail.


Dated :        November 13, 2006
               Albany, NY



                              Lawrence E. Kahn
                              U.S. District Judge

34